

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Bascom Giles
Commissioner, General Land Office
Austin, Texas

Dear Sir:

Opinion No. O-3581
Re: Filing in General Land
Office oil and gas lease
of John F. Gilbert to
L. W. Stierem.

You have requested our opinion as to whether
or not the asserted claim of Magnolia Petroleum Company
to the oil and gas in 480 acres of Section 264, Certi-
ficate 3699, G. C. & S. F. Ry. Co. original grantee, in
Webb County, Texas, as such claim is evidenced by copies
of instruments attached to your letter of July 10, 1941,
is an obstacle to the filing in the General Land Office
of an oil and gas lease covering the same land dated
June 23, 1941, executed by John F. Gilbert to L. W.
Stierem.

To render this opinion intelligible, it is
necessary that we first briefly review the facts stated
in your letter and disclosed by the instruments thereto
attached.

On April 25, 1921, F. E. Pryor, et ux, the then
owners of the surface, executed an oil and gas lease in
the usual form to R. O. Barnsley, said lease providing
for a primary term of 5 years and for as much longer
thereafter as oil and gas should be produced from the
land. This lease by a chain of written assignments was
transferred to the Trustees of Magnolia Petroleum Company
on January 31, 1923.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

738

You state that no production was secured under this lease. This being true, the lease expired by its own terms on April 25, 1926, and is no longer of any force or effect. By instrument dated May 10, 1923, F. X. Pryor, et ux, attempted to convey to the trustees of Magnolia Petroleum Company "all the oil, gas and other minerals in and under and that may be produced" from the 480 acres described in the 1921 lease, together with "the right of ingress and egress at all times for the purpose of mining, drilling and exploring said land for oil, coal, gas and other minerals and removing the same therefrom". Such instrument further recited:

"It is understood, however, that the State of Texas is the owner of and has not parted with the title to an interest in the minerals in said land equal to an undivided 1/16 thereof:-
* * *"

"The above described land being now under an oil and gas mining lease held by Magnolia Petroleum Company, it is understood and agreed that this conveyance is made subject to said lease but covers and includes all of the grantors' undivided 1/16 interest in and to the oil, gas and other minerals provided for in said lease, and also all of the oil and gas royalty and rental and other rentals accruing to the grantors herein under the same.

"It is understood and agreed that in the event the said above described lease for any reason should become cancelled or forfeited, then and in that event, the lease interest and all future rentals and royalties on said land for oil, gas and other mineral privileges shall be owned by the grantee herein, it owning an estate in fee simple in so far as the same relates to all the oil, gas and other minerals in, upon and under said land except for the undivided 1/16 interest therein retained by the State of Texas.

"This sale is made for and in consideration of the sum of TWENTY-FOUR HUNDRED ($2400.00) DOLLARS cash in hand paid, the receipt of which is hereby acknowledged."

You state that none of these instruments was filed in the General Land Office until 1933 when traveling auditors from the Land Office discovered their existence. Your records further reveal that the only payments received by the State have been the statutory minimum rentals (10¢ per acre) since 1923, a total of $526.00.

John F. Gilbert, the present surface owner, acting individually and as agent for the State has executed an oil and gas lease to L. W. Stieren, dated June 23, 1941, and has presented it for filing in the General Land Office.

The question as to whether or not Magnolia Petroleum Company has any interest in the oil and gas in this land depends upon a proper construction of the "Relinquishment Act", Articles 5367-5379, inclusive, R. C. S. 1925, Ch. 81, Acts of 1919, 36th Legislature, Second Called Session. This act has been many times construed by the Courts. It has been held that the Relinquishment Act does not operate to vest title in the surface owner to any of the oil or gas, but that such owner is simply empowered by the act to act as agent for the State of Texas in leasing or selling the State's oil and gas. As such agent the surface owner is authorized to exact from the lessee the same amount of bonus, royalties and rentals as are paid to the State. Greene v. Robinson, 8 S. W. (2) 655; Empire Gas & Fuel Co. v. State, 47 S. W. (2) 273. In those decisions it has been pointed out that the express purpose of the act was to promote the active cooperation of the owner of the soil and to facilitate the development of the State's oil and gas resources.

In Lemar v. Garner, 50 S.W. (2) 769, the effect of the Relinquishment Act was further clarified. The Court there said:

"In our opinion, the act, when fairly and reasonably construed, also means that all minerals not disposed of go with the title of the land, subject to the provisions of the act. That when a valid and binding lease or conveyance of the minerals is made by the owner of the land, as the agent of the state, then in that event he receives the foregoing amounts as compensation for his services. His share of the rentals, royalties, and bonuses derived from the leases executed by him become property rights during the period of time for

Honorable Bascom Giles - Page 4

which the lease runs. Prior to the making of
the mineral lease, the owner of the land has no
right to assign or convey any mineral rights in
the property. It is the intention of the law
that the owner of the land shall be the agent of
the state to execute mineral leases. Whenever
a mineral lease executed by a prior owner termi-
nates, the then owner of the land becomes the agent
of the state with authority to sell or lease the
oil and gas mineral rights, as provided for in the
Relinquishment Act."

In Colquitt v. Gulf Production Company, 52 S. W.
(2) 235, the court held that only the State and not the
surface owner could maintain an action to cancel a lease
executed by a surface owner as agent. The court said:

"The surface owners are allowed by the
statute to exact such payments from the lessee
merely as compensation to be obtained only by a
sale or lease as the State's agents. This com-
pensation can be gotten only under the lease and
the right to it cannot be used as a basis for
destroying the lease."

And in McDonald v. Dees, 15 S. W. (2) 1075, it was
held that:

". . .the right to act as agent provided for
in the act was peculiar to the owner of the soil
at the time of a lease or sale, and that a prior
owner of the land would have no rights in the
matter after the title to the surface had passed
out of his hands. . . the original purchaser or
any subsequent venders of the land had no rights
in the minerals which were capable of being re-
served."

In the above cited decisions and others unnecessary
to cite here the Relinquishment Act has been construed as
not vesting any interest in the oil and gas in the surface
owner. The act simply confers upon the surface owner the
authority to act as agent for the State in executing oil

and gas leases together with the right to exact from the lessee the amounts mentioned in the act as compensation for his services and damages to the surface estate. In reaching this conclusion, the courts have stressed that provision of the act which expressed its purposes in these words:

"To promote the active cooperation of the owner of the soil and to facilitate the development of its oil and gas resources, the State hereby constitutes the owner of the soil its agent. . ." (Ch. 81, Acts of 36th Legislature, Second Called Session)

Viewing the instruments upon which Magnolia Petroleum Company's claim is based in the light of the decisions and in harmony with the expressed purposes of the act, we must conclude that such company has no interest whatsoever in the oil and gas underlying the land in question. Its rights as lessee clearly terminated with the termination of its oil and gas lease on April 25, 1926. The power of Pryor as agent of the State to execute a conveyance of the minerals was exhausted when he executed the 1921 lease. That agency power in Pryor could only be revived upon the termination of the lease during Pryor's ownership of the surface. In 1923, according to the express recitation in the mineral deed of that date from Pryor to Magnolia, the 1921 lease was still in effect and such mineral deed was expressly recited to be subject to the lease. Thus, the only assignable right owned by Pryor in 1923 was his right to collect one-half the rentals and royalties provided for in the 1921 lease for as long as such lease remained in force. Pryor owned no interest in the oil and gas in place and was powerless to convey any such interest.

We think it clear that the Relinquishment Act was not intended and cannot be construed as authorizing the surface owner, after execution of an oil and gas lease by him, to convey in fee simple the State's reversionary interest in the oil and gas. To so hold would directly thwart the plainly expressed purpose of the act - "to facilitate the development of the State's oil and gas resources." We hold, as stated in Lamar v. Garner, supra, that "it is the intention of the law that the owner

of the land shall be the agent of the State to execute mineral leases."   We further hold that it was not the intention of the law to permit a surface owner, after he has executed a lease, to convey in fee simple or otherwise the State's reversionary interest in the oil and gas.

You are therefore advised that in our opinion the Magnolia Petroleum Company has no interest whatsoever in the minerals in the tract of land in question, and the instruments under which Magnolia claims present no obstacle to your filing the oil and gas lease recently executed by John F. Gilbert.

In fairness to the parties to the above mentioned 1923 conveyance, we add that the records of your office support our view of that transaction. The 1923 instrument recited a paid cash consideration of $2400.00. No part of such payment has ever been paid to the State. This indicates to us that the parties to that instrument intended it as nothing more than an assignment by Pryor of his right to collect certain amounts under the 1921 lease. If any other effect was intended one-half of such amount would have been paid to the State at the time of the execution of the instrument.

We trust your inquiry has been fully answered.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _____
Robert A. Kepke
Assistant

REK:BT

APPROVED JUL 19, 1941

ATTORNEY GENERAL OF TEXAS

